J-S14016-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BRANDON MICHAEL WEBB | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHARLYNN KRISTINE WEBB | : | |
| | : | |
| Appellant | : | No. 1755 MDA 2025 |

Appeal from the Order Entered November 17, 2025
In the Court of Common Pleas of York County Civil Division at No(s):
2024-FC-001049-03

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

CONCURRING MEMORANDUM BY KUNSELMAN, J.:    **FILED: JULY 28, 2026**

I agree with the Majority that the Appellant waived her issues for appeal by not citing to the record where the relevant testimony is located.   I write separately because a relocation case is a monumental decision for any trial judge and any family involved in a custody dispute.   And even if citations to the record were provided, I do not believe the court abused its discretion in denying Mother's relocation petition.

Here, Mother sought to relocate to California with the parties two children ages 4 and 1.  She claimed that in California she would have familial support she lacks in Pennsylvania, from her Father and grandparents, (who are in their 90s), as well as a better job.  As the party seeking to relocate, she bore the burden of proof, to show that the relocation would serve the best

interests of the minor children, considering multiple factors set forth in the

relocation statute.[1]

_____

[1] Section 5337 of the relocation statute sets forth relevant factors and burden of proof as follows:

> (h) Relocation factors.--In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
>> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>>
>> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>>
>> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
>>
>> (4) The child's preference, taking into consideration the age and maturity of the child.
>>
>> (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.
>>
>> (6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.
>>
>> (7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.
>>
>> (8) The reasons and motivation of each party for seeking or opposing the relocation.
>>
>> (9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.
>>
>> (10) Any other factor affecting the best interest of the child.

*(Footnote Continued Next Page)*

Mother disputes the court's findings on three of the relocation factors, namely 2, 6 and 7. As to factor 2, Mother's argument focuses solely on the trial court's comments regarding the specialized dental care for one of the children, E.G.W. This child was born with a cleft palate and has been treating with a team at the Children's Hospital of Philadelphia (CHOP). She claims she presented unrefuted testimony that she located a suitable dental team in California. Mother's Brief at 10.

Contrary to Mother's contention, the trial court did not overlook this testimony. Instead, the trial court concluded that the child had an established team in Pennsylvania, and although the surgeon was retiring, the other members of the team at CHOP would remain. Therefore, there was an established medical team in Pennsylvania, "despite Mother's contention of the opposite." T.C.O., 1/16/26, at 12. It appears the court found the dental considerations under this factor to be neutral, as there were teams in both locations.

Most significant to the trial court on this factor, which Mother completely ignores, however, was the impact a relocation would have on the children's

---

(i) Burden of proof.--
> (1) The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h).
> (2) Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation.

23 Pa. C.S.A. § 5337.

relationship with their father. The court stated, "Mother's proposed move to California would have a significant impact on the children's emotional development as it relates to the relationship with Father, who resides in Pennsylvania and would not be able to have meaningful periods of custody with the children. As such, this court found factor 2 weighs in favor of Father." *Id.*

As to factor 6, Mother suggests the trial court assumed, without any evidence, that her salary in California would not match the supposed increased cost of living there. Mother's Brief at 10. Mother believes this speculation tainted the court's findings on this factor. Again, Mother focuses on only part of the trial court's analysis of this issue. First, the trial court faulted Mother for the type of jobs she applied to in Pennsylvania, noting that she only looked for menial jobs in Pennsylvania and not jobs commensurate with her experience, which she looked for in California. *Id.* at 12-13.

On the cost of living, the court stated, "Moreover, Mother **presented no evidence** with regard to the cost of living in California versus Pennsylvania and whether or not the higher salaries in California would be offset by the higher cost of living that Mother would bear in California versus Pennsylvania." *Id.* (emphasis added). Here, the court simply concluded that Mother did not meet her burden of proof by failing to produce evidence of the cost of living in California versus Pennsylvania. This conclusion was not "rank speculation" as Mother argues. Instead, the court found Mother's allegations that her

proposed relocation would increase the children's standard of living were not adequately proven.

Finally, Mother ignores that on this factor, "the [trial court] also noted the significant travel expenses that would be involved in child custody exchanges, should Mother relocate across the country, given the young ages of the children." T.C.O. at 13. Thus, the court's conclusions on this factor involved far more than an assumed increase in the cost of living. Indeed, the court simply could not conclude that this factor weighed in favor of Mother due to her skewed job search, no evidence comparing the cost of living,[2] and the significant travel expenses involved in cross-country accompanied flights for two young children. As the court noted in its discussion of factor 3 at the close of the relocation hearing, a proposed relocation across the country "would require lengthy flights and considerable expense to transport not just the two children but also a responsible adult. These children are one and four, [and] will not be able to fly on their own. So, for Father to exercise any form of custody at any point in time throughout the year would require at least an adult and two child plane tickets and likely would come at a significant expense." N.T., 10/31/25 at 139-140.

---

[2] I did not scour the record for testimony on this issue. As noted, Mother did not identify where in the record, she produced testimony supporting her burden of proof on her appellate issues. I did, however, read the trial court's conclusions regarding all the custody and relocation factors, set forth at the end of the second day of testimony.

Finally, as to factor 7, Mother believes she produced undisputed evidence that the children's lives would be improved because she would enroll them "in a far superior school in California that would expose the children to an immersive learning experience in the Spanish language." Mother's Brief at 11. As the trial court noted, however, this factor encompasses far more than educational benefits. Factor 7 asks the court to consider whether "the relocation will enhance the general quality of life for the child[ren], including, but not limited to, financial or emotional benefit or educational opportunity." 23 Pa.C.S.A. § 5337 (h)(7).

Taking this factor as a whole, the trial court concluded that "a relocation would essentially deprive the children of any meaningful relationship with their biological father, the nonrelocating party, absent a few short visits throughout the year." Thus, even if there was a benefit to the new proposed school in California, it does not mean the court would have weighed this factor any differently. The court believed the "the emotional benefit of a meaningful relationship with their biological parent and paternal relatives is not outweighed by the speculative financial and educational benefit to the children in relocation." T.C.O. at 14.

In short, Mother has chosen to cherry pick a few factors to argue in favor of reversing the court's relocation decision. However, relocation involves weighing all ten of the factors, not just a few. As the relocating party, she had the burden of proof on those factors. In addition, Mother focuses on only some of the court's findings regarding the factors she challenges, while

overlooking those findings adverse to her position. Overall, she does not convince me that the trial court's decision misapplied the law, was manifestly unreasonable, or was the product of bias, ill-will or prejudice. Therefore, I would not find the trial court abused its discretion in denying her relocation petition at this time.

PJE Bender joins this Concurring Memorandum.